1

2

3

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 22, 2020

SEAN F. McAVOY, CLERK

4

UNITED STATES DISTRICT COURT

5

EASTERN DISTRICT OF WASHINGTON

6

GLEN A. LIVERMORE,

NO:  4:18-CV-5075-RMP

7

Plaintiff,

ORDER GRANTING DEFENDANTS'
SUMMARY JUDGMENT MOTION

8

v.

9

DEBORAH TONHOFER, MD;
JOHN SMITH, MD; STEVEN

10

HAMMOND, DOC Chief Medical
Officer; RUSTY SMITH, Head of

11

Medical at AHCC; DERRY,
Correctional Officer at WSP; BRENT

12

CARNEY, DOC Dietary Services
Program Manager; JOHN

13

BOUCHARD; JOHN DOES 1-2,
transporting officers, C/O

14

HOMELEIN, Correctional Officer at
WSP,

15

Defendants.

16

17

BEFORE THE COURT is a Motion for Summary Judgment by Defendants

18

Deborah Tonhofer, MD, et al.[1]  ECF No. 94.  Also before the Court is Defendants'

19

_____

20

[1] The caption in this matter shall be amended to reflect that Dr. Tonhofer spells her

21

first name "Deborah," rather than "Debra."  ECF No. 101 at 1 n.1.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 1

Motion to Strike Plaintiff's unauthorized sur-reply from the docket.  ECF No. 116.

The Court has reviewed Defendants' Motion for Summary Judgment, ECF No. 94,

and the supporting declarations and exhibits, ECF Nos. 96, 99, 100, 101, and 102;

Plaintiff's Response and supporting declaration and exhibits, ECF No. 109;

Defendants' Reply and Reply Statement of Facts, ECF Nos. 110 and 111; Plaintiff's

Sur-Reply and Sur-Reply Statement of Facts, ECF Nos. 113 and 114; Defendants'

Motion to Strike Sur-Reply and Sur-Reply Statement of Facts, ECF No. 116;

Plaintiff's Response, ECF No. 117; the remaining record; the relevant law; and is

fully informed.

## BACKGROUND

Plaintiff seeks liability against Defendants under 42 U.S.C. § 1983, alleging

that Defendants were deliberately indifferent to his medical conditions, including

back injury, chronic pain, and Type II diabetes; and under the Americans with

Disabilities Act, 42 U.S.C. §12101 *et seq*., alleging that Defendants failed to provide

reasonable accommodation for Plaintiff's diabetic dietary needs and in transporting

him in vehicles that were not wheelchair accessible.  ECF No. 11.  The following

underlying facts are undisputed, unless otherwise noted.

Mr. Livermore has experienced back, shoulder, and neck pain going at least as

far back as 1980, when he was severely injured while working as a longshoreman

and endured a lengthy process of learning to walk again through physical therapy.

ECF Nos. 96 at 4; 109-2 at 3.  Mr. Livermore went on disability after he reinjured

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 2

his shoulder and back in approximately 1990.  ECF No. 96 at 4.  Mr. Livermore also

reports a history of substance abuse disorder.  *See* ECF No. 96 at 4.

Once Mr. Livermore was in the custody of the Washington Department of

Corrections ("DOC"), his chronic back pain continued and he reinjured himself

while lifting trash bags in 2007.  ECF No. 96 at 4.  Medical records and a declaration

from the DOC's Chief Medical Officer, Frank Longano, M.D., who is not a

Defendant in this action, reflect that Mr. Livermore has a long history of evaluation

and treatment as an inmate.  ECF Nos. 99 at 2−3; 96-2.  His evaluations and

treatment have involved numerous and frequent visits with physicians, physicians

assistants (PAs), nurses, and physical therapists at the DOC as well as with

specialists.

The DOC's Offender Health Plan ("OHP") sets forth the health services that

are available to inmates.  *See* ECF No. 96-1 at 6.  The OHP authorizes individual

practitioners to administer "Level 1: Medically Necessary Care," for intervention

that is for a life threating emergency, onsite urgent care, or outpatient care that is

listed in the DOC's Levels of Care Directory.  *Id.* at 13−15.  The OHP categorizes

care that is not medically necessary, and therefore, not authorized to be provided to

inmates, as "Level 3."  *Id.* at 13.  When a specialist consultation is necessary, or an

intervention is not listed in the Levels of Care Directory, the decision regarding

whether care is allowed as Level 1 or disallowed as Level 3 must be made by the

Care Review Committee ("CRC").  *Id.* at 13−15.  The CRC determines by majority

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 3

1    vote whether a proposed intervention is approved as medically necessary (Level 1)

2    or not approved as not medically necessary.  ECF No. 96-1 at 15.

3        The more than 300 pages of medical records before the Court on summary

4    judgment contains numerous CRC Reports for interventions requested by Mr.

5    Livermore himself or proposed by DOC medical staff.  *See* ECF No. 96-2.  In one

6    report dated February 8, 2012, the CRC authorized as Level 1 the administration of

7    opioids to Mr. Livermore for up to six months for lower back pain relief.  ECF No.

8    96-2 at 10.  However, in July 2012, after Mr. Livermore violated his opioid contract

9    on three separate occasions and "cheeked" his medications, the CRC denied Mr.

10    Livermore's request to reinstate his opioid authorization.  *Id.* at 26.  In an August 27,

11    2014 report, the CRC rejected as Level 3 a request by Mr. Livermore to see a

12    dermatologist.  ECF No. 96-2 at 15.

13        Around mid-May 2015, while incarcerated at Airway Heights Correctional

14    Facility ("Airway Heights") in Airway Heights, Washington, Mr. Livermore

15    reported an unwitnessed fall from standing.  ECF No. 96-2 at 52.  He was

16    immediately transported to the Deaconess Hospital emergency room.  *Id.*  After Mr.

17    Livermore received a physical examination, a CT scan, and an x-ray, he received

18    pain medications before being discharged to Airway Heights in stable condition with

19    a recommendation to take Tylenol or ibuprofen as needed.  ECF No. 96-2 at 52−53.

20    On June 17, 2015, the CRC denied as level 3 a neurosurgery consult and a

21

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 4

1   wheelchair.  ECF No. 96-2 at 35−36.  Dr. Tonhofer is the Medical Director at

2   Airway Heights.  ECF No. 101 at 1.

3          In approximately September 2015, Mr. Livermore was transferred to the

4   Washington State Penitentiary ("WSP").  ECF No. 96 at 8.  During this time, DOC

5   medical staff "tried many different non-opioid medications to decrease Mr.

6   Livermore's pains, such as acetaminophen, etodolac, amitriptyline, dilaudid, MS

7   Contin, Robaxin, Lisinopril, Tegretol, naproxen, gabapentin, and hydroxyzine, with

8   some limited success."  ECF No. 96 at 5−6.  DOC also provided physical exams, x-

9   rays, physical therapy, and counseling on the benefits of weight loss and increased

10  mobility to address back pain.  *Id.* at 6, 10.  Around June 2017, Mr. Livermore filed

11  a complaint with the Washington State Medical Quality Assurance Commission

12  alleging inadequate care by Defendant Dr. Smith for Mr. Livermore's chronic pain.

13  *See* ECF No. 98-2 at 24.  In a letter dated August 15, 2017, the Commission

14  informed Dr. Smith: "A Commissioner panel comprised of physician(s), physician

15  assistant(s), and public member(s) considered the evidence and determined that [Dr.

16  Smith's] care was within the standard and closed the case."  *Id.* at 40.

17         Mr. Livermore began to present with hip ulcerations suggestive of prolonged

18  immobility in 2017.  ECF No. 99 at 4.  Based on an examination of Mr. Livermore's

19  medical records, Dr. Longano notes: "When the CRC was presented with this

20  objective evidence [that Mr. Livermore's condition was worsening], they

21  appropriately approved a neurosurgical consult and intervention."  *Id.*  Mr.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 5

Livermore received an MRI in June 2017 and, subsequently, saw several different providers throughout fall 2017 to be evaluated for surgery. *See* ECF No. 96 at 12.

On December 6, 2017, Mr. Livermore received lumbar fusion surgery and recovered in the WSP Infirmary. ECF No. 96-2 at 94. Mr. Livermore received opioid pain medication for approximately two weeks after the surgery while in the infirmary. *See* ECF No. 96-2 at 96. When Mr. Livermore was discharged from the Infirmary to his unit at WSP, medical staff tapered his ingestion of opioid pain medication over seven days and prescribed Tylenol and naproxen to address intermittent and ongoing pain. *Id.*

Mr. Livermore also describes suffering severe pain due to the method by which Defendant Correctional Officers Homelein and Derry transported him to two post-surgical medical appointments. *See* ECF No. 11 at 11. On February 7, 2018, Mr. Livermore filed a grievance with the DOC asserting that he experienced bleeding after twisting his abdomen on January 31, 2018, and on February 1, 2018, when he rode in the vehicles used by Defendants, despite his request to be transported in a wheelchair van. ECF No. 100-1 at 18; *see also* ECF No. 11 at 13 (listing the same two dates in Plaintiff's First Amended Complaint). The WSP Grievance Coordinator responded on February 20, 2018, that at the time of the relevant two appointments, Mr. Livermore had been coded in the database as having "no special needs" regarding transportation, but had also been authorized to use a wheelchair for his medical appointments. *Id.* The coordinator assured Mr.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 6

Livermore that transporting officers would be instructed to use a wheelchair van for future medical appointments.  ECF No. 100-1 at 18.  Mr. Livermore does not indicate that transportation continued to be an issue after the grievance resolution.

Mr. Livermore also has Type II diabetes.  *See* ECF No. 96-2 at 52, 212.  Mr. Livermore alleges that because the WSP does not have a special diet "specifically tailored for diabetic[] prison residents[,]" between "June of 2016, through August of 2018, Mr. Livermore has been subjected to a Hobson's choice of not eating enough food to adequately sustain him and eating sugar foods (such as peanut butter and jelly sandwiches which are served daily)."  *Id.* at 15−16.

On approximately August 3, 2016, Mr. Livermore filed a grievance asserting that WSP should offer "a diabetic diet for diabetics."  ECF No. 102-1 at 186−87. Defendant Brent Carney, Dietary Services Manager for the DOC, responded to the grievance on approximately September 6, 2016, that "there is not a one size fits all diet for diabetics."  *Id.*  Mr. Carney continued: "That is why we ask you to take the responsibility to self-restrict foods in your diet that impact your blood sugar control. Are you able to count carbohydrates in your diet? If not please contact your provider.  They can provide you with the education needed to accomplish the task." *Id.*

Mr. Carney confirmed Mr. Livermore's allegation that the DOC does not offer a special diet tailored to Type 2 diabetics such as Mr. Livermore.  ECF No. 102 at 4. However, Mr. Carney attests that the DOC offers a "Lighter Fare" diet that is the

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 7

primary recommended diet for inmates who have Type 2 diabetes, and any inmate

may request it.  *Id.*  Mr. Livermore was provided print material regarding the Lighter

Fare diet in approximately June 2016.  *Id.* at 6.  Mr. Livermore elected to receive the

Lighter Fare diet in 2019, after this lawsuit was filed.  ECF No. 102-1 at 182.

  Defendants submitted DOC Commissary records reflecting purchases of

ramen, flour tortillas, chips, marshmallows, chocolate, graham crackers, candy, and

pound cake by Mr. Livermore from 2016 into 2019.  ECF No. 102-1 at 188−210.

Defendants did not submit evidence to show that Mr. Livermore himself consumed

all of what he bought, and Mr. Livermore maintains that many of his purchases were

for other inmates.  ECF No. 109 at 8.

  Mr. Livermore filed his initial Complaint in this matter on April 26, 2018,

ECF No. 1, followed by his First Amended Complaint on September 4, 2018, ECF

No. 11.  This case was stayed on November 1, 2019, while Plaintiff underwent

cancer treatment, and the stay was lifted on February 13, 2020, at Plaintiff's request.

ECF Nos. 64 and 78.

**LEGAL STANDARD**

  Summary judgment serves "to isolate and dispose of factually unsupported

claims."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323−24 (1986).  Summary

judgment is appropriate if the evidence, viewed in the light most favorable to the

nonmoving party, shows "that there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 8

Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.  Parties opposing summary judgment must cite to "particular parts of materials in the record" establishing a genuine dispute or show why the materials cited do not establish either the absence or presence of a genuine dispute.  Fed. R. Civ. P. 56(c)(1).  "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable or if not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted).  "Conclusory allegations unsupported by factual data cannot defeat summary judgment." *Rivera v. Nat'l R.R. Passenger Corp.*, 331 F.3d 1074, 1078 (9th Cir. 2003).

## DISCUSSION

### *Eighth Amendment Claim*

Defendant moves for summary judgment dismissal of Plaintiff's Eighth Amendment claim.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 9

1    The government is obligated to "provide medical care for those whom it is

2  punishing by incarceration," and failure to meet this obligation can result in an

3  Eighth Amendment violation cognizable under 42 U.S.C. § 1983. *Estelle v.*

4  *Gamble*, 429 U.S. 97, 103 (1976).  Prison officials may violate the Eighth

5  Amendment's proscription against cruel and unusual punishment when their

6  actions demonstrate "deliberate indifference to serious medical needs." *Id*. at 104.

7  A plaintiff must establish: (1) a serious medical need; and (2) deliberate indifference

8  to that need by prison officials. *See McGuckin v. Smith*, 974 F.2d 1050, 1059−60

9  (9th Cir. 1992), *overruled in part on other grounds by WMX Techs., Inc. v. Miller*,

10  104 F.3d 1133 (9th Cir. 1997) (en banc).

11    A "serious medical need" exists if the failure to treat the injury or condition

12  "could result in further significant injury or the 'unnecessary and wanton infliction

13  of pain.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin*,

14  974 F.2d at 1059).  "Indications that a plaintiff has a serious medical need include

15  the existence of an injury that a reasonable doctor or patient would find worthy of

16  comment or treatment; the presence of a medical condition that significantly affects

17  an individual's daily activities; or the existence of chronic and substantial pain."

18  *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *McGuckin*, 974

19  F.2d at 1059−60) (internal quotation marks omitted).

20    Deliberate indifference can be "manifested by prison doctors in their response

21  to the prisoner's needs or by prison guards in intentionally denying or delaying

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 10

access to medical care or intentionally interfering with the treatment once

prescribed." *Estelle*, 429 U.S. at 104−05 (footnotes omitted).  Medical malpractice

or negligence does not support a cause of action under the Eighth Amendment.

*Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam).

Furthermore, a delay in medical treatment does not violate the Eighth Amendment

unless that delay causes further harm.  *McGuckin*, 974 F.2d at 1060.  Additionally,

there is no constitutional right to an outside medical provider of one's own choice.

*See Roberts v. Spalding*, 783 F.2d 867, 870 (9th Cir. 1986) ("A prison inmate has no

independent constitutional right to outside medical care additional and supplemental

to the medical care provided by the prison staff within the institution.").

Nor does a difference in medical opinion as to the need to pursue one course

of treatment over another, or the difference in opinion between the prison official

and the inmate concerning the appropriate treatment, amount to deliberate

indifference.  *See Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

Difference in opinion amounts to deliberate indifference only when the course of

treatment chosen is "medically unacceptable under the circumstances" and was

chosen "in conscious disregard of an excessive risk to plaintiff's health."  *Id*.  Only

conduct characterized by "obduracy and wantonness" amounts to deliberate

indifference under the Eighth Amendment.  *Albers*, 475 U.S. at 319.

Plaintiff alleges that Defendants were deliberately indifferent to his medical

needs and provided constitutionally deficient medical care when they: delayed

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 11

1  providing Plaintiff surgery to address his lower back injury and pain; should have

2  provided Plaintiff with more opioid pain medication; twice transported Plaintiff in a

3  car rather than in a wheelchair accessible van after his lumbar fusion surgery; and

4  denied him nutritionally adequate meals suitable for a diabetic.  ECF No. 11 at

5  11−17.  The Court addresses each of these alleged instances of deliberate

6  indifference in turn.

7                    Lower Back Pain

8          Defendants do not dispute that Plaintiff's lower back pain qualifies as a

9  serious medical need.  However, Defendants argue that the course of care leading up

10  to Plaintiff's lumbar fusion surgery in December 2017 precludes a finding of

11  deliberate indifference.  *See* ECF No. 94 at 6.

12          Plaintiff responds that he suffered excess pain during the relevant period due

13  to delayed surgery and that his suitability for lumbar fusion surgery was evident as

14  far back as 2012.  *See* ECF No. 109 at 11.  Plaintiff maintains that all of the MRIs

15  between 2009 and his surgery showed the same damage.  *Id.* at 12.  Plaintiff also

16  alleges in his response that Defendants Dr. Tonhofer and Dr. Smith, who submitted

17  declarations in support of the Motion for Summary Judgment, are "lying."  *Id.* at 3.

18  Plaintiff asserts in his Declaration that Dr. Smith and Dr. Tonhofer knew in 2012

19  that he should be examined by a neurosurgeon, but the DOC "stopped . . . the

20  doctors from working on" him.  ECF No. 109-15 at 2.  Plaintiff alleges that Dr.

21  Smith was transferred from Airway Heights to WSP after he tried to help Plaintiff,

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 12

1  and when Dr. Smith treated Plaintiff at WSP he refused to help Plaintiff out of a

2  desire to avoid another transfer.  *Id.*

3       As a preliminary matter, Defendants object to Plaintiff's reliance on hearsay

4  and request that the Court strike "statements attributed to others, and statements

5  attributed to the Plaintiff himself."  ECF No. 111 at 2.  A nonmoving party may rely

6  on hearsay evidence to establish a genuine issue of material fact if the evidence

7  could be presented in admissible form at trial.  *See Carmen v. S.F. Unified Sch.*

8  *Dist.*, 237 F.3d 1026, 1028−29 (9th Cir. 2001).  Therefore, the Court finds it

9  inappropriate to strike the statements to which Defendants object, because Plaintiff

10 could conceivably remedy the hearsay statements to become admissible at trial.

11      However, courts do not rely on speculation or irrelevant evidence to resolve

12 summary judgment motions.  *See Burch v. Regents of the University of California*,

13 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006) ("[S]tatements in declarations based on

14 speculation or improper legal conclusions, or argumentative statements, are not *facts*

15 and likewise will not be considered on a motion for summary judgment.  Objections

16 on any of these grounds are simply superfluous in this context.") (emphasis in

17 original); *see also Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982)

18 (holding that vague and conclusory allegations of official participation in civil rights

19 violations are insufficient to withstand a motion to dismiss).  Therefore, the Court

20 does not rely on Plaintiff's conclusory statements that Defendants are "lying,"

21 because Plaintiff does not support that vague allegation with evidence.  *See* ECF No.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 13

1  109 at 3.  Likewise, the Court does not find Plaintiff's speculation about Defendants'

2  motives for their actions toward Plaintiff to be based on any verifiable facts in the

3  record.  *See* ECF No. 109-15 at 2.

4       The outstanding issue with respect to Plaintiff's claim that Defendants'

5  actions manifested deliberate indifference to Plaintiff's chronic back pain is whether

6  Defendants "intentionally denied or delayed access to medical care or intentionally

7  interfered with the treatment once prescribed." *Estelle*, 429 U.S. at 104−05.  The

8  record reflects more than 109 visits and decisions regarding Plaintiff's chronic pain

9  issues during his incarceration between 2008 and May 2017.  ECF No. 98-2 at

10  27−36.  It is undisputed that Plaintiff received further medical attention in the form

11  of pain management, testing, and examinations by specialists to determine Plaintiff's

12  suitability for surgery between May 2017 and the date of Plaintiff's lumbar fusion

13  surgery in December 2017.  *See* ECF No. 96 at 12.

14       With respect to medications for pain management, Plaintiff does not dispute

15  that DOC medical providers prescribed a wide variety of non-opioid pain

16  medications throughout his treatment history at Airway Heights and WSP.  Plaintiff

17  maintains that Defendant Dr. Smith disregarded Plaintiff's "serious medical need for

18  stronger pain medication" than "NSAIDs" when Mr. Livermore was tapered off of

19  Oxycontin approximately two weeks after his surgery.  *See* ECF No. 11 at 14.

20  However, Plaintiff does not dispute that Dr. Smith and other DOC medical providers

21  considered Plaintiff's history of controlled substance abuse.  *See* ECF Nos. 96-2 at

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 14

96; 96 at 4–5 (Dr. Smith's declaration that due to Mr. Livermore's self-reported nineteen years of opioid use, "providers need to be very cautious in offering him opioids for pain relief, for fear of exacerbating his addiction problems").

The evidence in the record does not support a triable issue of fact regarding deliberate indifference to Plaintiff's chronic back pain. Rather, the evidence supports Plaintiff's longstanding disagreement with the care he has received, which does not amount to indifference by prison officials, as there is not a constitutional right to care or a provider of one's choosing. *See Roberts*, 783 F.2d at 870. Even if Plaintiff had offered evidence that Defendants breached a duty of care toward him with the treatment that they provided, that evidence would be insufficient to support his § 1983 claim, as even malpractice does not amount to deliberate indifference. *See* ECF No. 98-2 at 27 (Washington State Medical Quality Assurance Commission letter finding that Dr. Smith's treatment of Mr. Livermore fell within the standard of care); *Broughton*, 622 F.2d at 460 (medical malpractice or negligence does not support an Eighth Amendment claim). Rather, the undisputed facts regarding the care that Plaintiff received support that the DOC medical providers provided extensive access to care and treatment for Plaintiff's serious medical needs. There is no evidence of deliberate indifference. Therefore, the Court grants summary judgment to Defendants on Plaintiff's Eighth Amendment deliberate indifference claim as relates to his chronic back pain.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 15

1

        <u>Transport</u>

2        Defendants dispute whether "discomfort related to a non-van transport

3   constitutes a serious medical need." ECF No. 94 at 11. Moreover, Defendants argue

4   that even if irritation of Plaintiff's post-surgery incision and ability to be transported

5   without undue pain does satisfy the serious medical need prong, Plaintiff has not

6   shown anything amounting to deliberate indifference in the after-care provided by

7   DOC following Plaintiff's surgery. *Id.* Plaintiff maintains that he recalls being

8   transported in a wheelchair for only "one or two" of his post-surgery in-town

9   appointments, and at least on one occasion the doctor had to cauterize his scar after a

10  non-wheelchair transport. ECF No. 109 at 8.

11       The undisputed record supports that Plaintiff's alleged non-transport issues

12  were resolved by Plaintiff's grievance. Once the WSP Grievance Coordinator

13  confirmed that Mr. Livermore had been authorized to use a wheelchair for his

14  medical appointments, the Coordinator assured Mr. Livermore that transporting

15  officers would be instructed to use a wheelchair van for future medical

16  appointments. ECF No. 100-1 at 18. The brief episode of transporting Plaintiff

17  without a wheelchair to post-surgery appointments was neither deliberate nor

18  indifferent to a serious medical need. *See Estelle*, 429 U.S. at 104−05 (requiring a

19  showing that the defendant officials were intentionally denying or delaying access to

20  medical care or intentionally interfering with the treatment once prescribed).

21

1    Therefore, the Court grants summary judgment to Defendants on Plaintiff's Eighth

2    Amendment deliberate indifference claim as relates to transport.

3              Diabetic Diet

4            Prison officials fall short of their constitutional obligations under the Eighth

5    Amendment when, with deliberate indifference, they fail to provide prisoners with

6    adequate food to maintain their health.  *Farmer v. Brennan*, 511 U.S. 825, 832

7    (1994).  A plaintiff must make an objective showing that the risk of harm to the

8    prisoner's health was sufficiently serious by establishing that there was some degree

9    of actual or potential injury, and that "society considers the [acts] that the plaintiff

10   complains of to be so grave that it violates contemporary standards of decency to

11   expose anyone unwillingly [to those acts]."  *Helling v. McKinney*, 509 U.S. 25, 36,

12   (1993); *see also Estelle*, 429 U.S. at 102.  A plaintiff also must make a showing of a

13   subjective component, regarding the prison official's awareness of a substantial risk

14   of serious harm and a knowing disregard for the risk.  *Farmer*, 511 U.S. at 837.  If

15   either the subjective or objective component is not established, then the Court need

16   not determine whether the other component has been satisfied.  *Helling*, 509 U.S. at

17   35.

18          Defendants argue that the DOC meets its constitutional obligation to inmates

19   with Type II diabetes by providing the Lighter Fare diet as an option.  ECF No. 94 at

20   12.  Defendants further argue that Plaintiff's diet claims are frivolous because he has

21

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 17

made "poor dietary choices" through his commissary purchases, "which suggest he is unwilling to be a partner in the management of his diet." *Id.* at 13.

Plaintiff responds by alleging that the diet that he was provided by DOC before filing this lawsuit did not meet his health needs as a diabetic because it was too heavy in carbohydrates and sugar. ECF No. 109 at 8. Plaintiff acknowledges that he purchased graham crackers, marshmallows, and chocolate on one occasion, but maintains that the other purchased food was for other inmates. *Id.*

The Court finds nothing in the record to support that Plaintiff suffered any actual injury, or was at risk of suffering injury, from the food options that he had during the relevant period. Therefore, having found that the objective component is not satisfied, the Court need not consider the subjective component, and concludes that Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment claim based on the lack of a diabetic diet.

Having addressed all of Plaintiff's theories of an Eighth Amendment violation, the Court grants Defendants summary judgment dismissal of Plaintiff's Eighth Amendment claim, under 42 U.S.C. § 1983, in its entirety.

### *ADA Claim*

Defendants argue that Plaintiff cannot pursue claims against individual defendants in their individual capacities under the ADA. ECF No. 94 at 13. Defendants further argue that, even if Plaintiff could proceed against individual defendants, his claim fails to meet the standards for a claim of an ADA violation

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 18

because he was not excluded from any services because of his disability and has not produced evidence that the Department failed to reasonably accommodate him. ECF No. 110 at 5.

Plaintiff responds by recounting the origins of what he alleges is a failure to accommodate his disability, during his incarceration at Airway Heights. ECF No. 109 at 26−28.

The ADA prohibits discrimination by public entities against qualified individuals with a disability. 42 U.S.C. §§ 12131−12132. To state a claim under Title II of the ADA and the Rehabilitation Act, a plaintiff must allege that: (1) he is an individual with a disability under the Act; (2) he is "otherwise qualified" to participate in or receive the benefit of the entity's services, programs, or activities, i.e., she meets the essential eligibility requirements of the entity, with or without reasonable accommodation; (3) he was either excluded from participation in or denied the benefits of the entity's services, programs, or activities, or was otherwise discriminated against by the public entity solely by reason of his disability; and (4) the entity is a public entity. *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 (9th Cir. 1999).

A plaintiff may assert a Title II claim only against "public entities." 42 U.S.C. § 12132; *Miranda v. Kitzhaber*, 328 F.3d 1181, 1187−88 (9th Cir. 2003). A plaintiff cannot sue a defendant in his individual capacity under the ADA. *See Steshenko v. Albee*, 42 F.Supp.3d 1281, 1290 (N.D. Cal. 2014); *Becker v. Oregon*, 170 F.Supp.2d

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 19

1061, 1066 (D. Or. 2001); *Thomas v. Nakatani*, 128 F.Supp.2d 684, 692 (D. Haw. 2000), *aff'd*, 309 F.3d 1203 (9th Cir. 2002).

Plaintiff names only individual defendants and does not state his claims against a public entity. *See* ECF No. 11. Moreover, Plaintiff has not come forth with any evidence that he was excluded from participation in or denied the benefits of the entity's services, programs, or activities, or was otherwise discriminated against by the public entity solely by reason of his disability. *See, e.g.,* ECF No. 109. Therefore, Defendants are entitled to summary judgment on Plaintiff's ADA claim.

### *Personal Participation*

A defendant is liable under 42 U.S.C. § 1983 when he or she personally participates in the constitutional deprivation. *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Defendants argue that Plaintiff does not allege any participation in or knowledge of any alleged act related to denying or delaying Plaintiff medical care by

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 20

Mr. Hammond, Rusty Smith, Correctional Officer Perry, and Correctional Officer

Bouchard.  Plaintiff responds with conclusory assertions with respect to each of

those Defendants, such as that Mr. Hammond "knows everything about this case"

and "what he says goes."  ECF No. 109 at 31−32.

As the Court found above with other assertions by Plaintiff, conclusory and

unsupported statements cannot defeat summary judgment.  *See Rivera*, 331 F.3d at

1078.  Therefore, the Court finds that Plaintiff has not shown any dispute of material

fact regarding the personal participation of Mr. Hammond, Rusty Smith,

Correctional Officer Perry, and Correctional Officer Bouchard.  Those Defendants

are entitled to summary judgment based on lack of personal participation.

Defendants also argue that there is no indication of personal participation by

Mr. Carney because Plaintiff merely alleges that Mr. Carney responded to

grievances.  ECF No. 94 at 18.  However, in the Ninth Circuit, a defendant may

personally participate in a constitutional violation by denying a grievance.  *See*

*Colwell v. Bannister*, 763 F.3d 1060, 1065, 1070 (9th Cir. 2014).  Therefore, the

Court does not find that Mr. Carney is entitled to summary judgment based solely on

lack of personal participation.

However, the Court agrees with Defendants that personal participation is an

additional basis supporting summary judgment for Mr. Hammond, Rusty Smith,

Correctional Officer Perry, and Correctional Officer Bouchard.

### *Qualified Immunity*

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 21

1    Defendants further argue that they are entitled to qualified immunity.  ECF

2    No. 94 at 18−19.  Plaintiff responds that he "needs his day in court" to prove that

3    Defendants are not entitled to qualified immunity from damages, and "they knew

4    what they were doing" when Defendants allegedly violated his constitutional rights.

5    ECF No. 109 at 33.

6    "Qualified immunity protects prison officials from suits seeking civil

7    damages provided that their conduct does not violate clearly established statutory

8    or constitutional rights of which a reasonable person would have known." *Harlow*

9    *v. Fitzgerald*, 457 U.S. 800, 818 (1982).  When government officials invoke

10    qualified immunity from suit, courts must decide the claim by applying a two-part

11    analysis: (1) whether the conduct of the official, viewed in the light most favorable

12    to plaintiff, violated a constitutional right; and (2) whether the right was clearly

13    established at the time of the alleged violation.  *See Pearson*, 555 U.S. 223, 232-36

14    (2009) (trial court judges should exercise their "sound discretion in deciding which

15    of the two prongs of the qualified immunity analysis should be addressed first in

16    light of the circumstances in the particular case at hand").  Thus, the constitutional

17    violation prong concerns the reasonableness of an official's mistake of fact, and the

18    clearly established prong concerns the reasonableness of the officer's mistake of

19    law. *See Torres v City of Madera*, 648 F.3d 1119, 1127 (9th Cir. 2011), *cert.*

20    *denied by Noriega v. Torres*, 565 U.S. 1114 (2012).  The qualified immunity

21    standard "gives ample room for mistaken judgments" by protecting "all but the

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 22

plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991).

The evidence shows that, at most, Defendants Dr. Smith and Dr. Tonhofer mistakenly delayed Mr. Livermore's treatment, that Mr. Livermore has disagreed with the treatment he has received, and that Mr. Livermore ultimately received surgery and accompanying medical treatment to alleviate his pain. This record does not rise to the level of a constitutional violation. Therefore, failing the qualified immunity test at the first prong, the Court need not proceed further and finds that all Defendants are entitled to summary judgment based on qualified immunity in addition to the other bases addressed above.

Defendants have shown that there is no genuine issue of material fact in this case, and they are entitled to summary judgment. Therefore, Defendants' Motion for Summary Judgment, ECF No. 94, is granted in its entirety.

### Motion to Strike

As noted above, the Court reviewed Defendants' Motion to Strike, ECF No. 116, Plaintiff's "Reply Statement of Facts," ECF No. 114, filed after Defendants' reply. Generally, the moving party gets the "final word," and further briefing from a non-moving party is allowed only where the moving party has raised new evidence or argument for the first time in a reply. *See e.g., Magic Link Garment Ltd. v. ThirdLove, Inc.*, 445 F. Supp. 3d 346, 358, n.2 (N.D. Cal. Apr. 22, 2020). However, the Court does not strike Plaintiff's Sur-Reply and Sur-Reply Statement of Facts

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 23

from the record after having found, considering everything that Plaintiff has

submitted, that there are no disputed material facts that may entitle Plaintiff to relief

on his Amended Complaint.  Because the Court finds that Defendants are entitled to

summary judgment, and Defendants do not argue that they have further arguments to

submit to the Court to address Plaintiff's Sur-Reply or Sur-Reply Statement of Facts,

the Court finds no prejudice to Defendants in considering Plaintiff's Sur-Reply and

Sur-Reply Statement of Facts and allowing them to remain on the docket.

Therefore, the Court denies Defendants' Motion to Strike, ECF No. 116.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Defendants' Motion to Strike, **ECF No. 116**, is **DENIED**.

2.    Defendants' Motion for Summary Judgment, **ECF No. 94**, is

**GRANTED**.

3.    Judgment shall be entered for Defendants on all claims in Plaintiff's

First Amended Complaint, without costs or fees for any party.

4.    All upcoming hearings and deadlines in this matter are **stricken**, and

any other pending motions are **denied as moot**.

5.    The Court certifies under 28 U.S.C. § 1915(a)(3) that an appeal from

this Order would not be taken in good faith and, therefore, the Court denies

IFP status for purposes of an appeal.  *See Coppedge v. United States*, 369 U.S.

438, 445−46 (1962).

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 24

1    **IT IS SO ORDERED**.  The District Court Clerk is directed to enter this

2    Order, provide copies to Plaintiff and counsel, and **close the file** in this case.

3    **DATED** October 22, 2020.

4

5    _____*s/ Rosanna Malouf Peterson*_____
     ROSANNA MALOUF PETERSON
     United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21